UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRITTNEY C. BOYD,<br><br>      Plaintiff,<br>  v.<br><br>INTERNATIONAL UNION OF<br>OPERATING ENGINEERS LOCAL 701,<br>et al.,<br><br>      Defendants. | CASE NO. 2:25-cv-01225-LK<br><br>ORDER DISMISSING<br>COMPLAINT WITH PREJUDICE |

  This matter comes before the Court sua sponte. This Court has repeatedly warned Plaintiff Brittney Boyd that if she continued to violate applicable law, the Court would impose sanctions up to and including dismissal of her suit. Ms. Boyd nevertheless continued to file frivolous submissions and violate applicable rules and this Court's orders. Accordingly, the Court ordered Ms. Boyd to show cause why her case should not be dismissed with prejudice. Dkt. No. 68. Ms. Boyd has failed to do so, and the Court therefore dismisses her claims with prejudice.

## I. BACKGROUND

At the inception of this case in June 2025, Ms. Boyd filed over 1,100 pages of materials with the Court: a 1,061-page complaint "consist[ing] of multiple embedded complaints, motions, charts, declarations, exhibits and random other documents," Dkt. No. 16 at 2–3 (citing Dkt. Nos. 13, 13-1, 13-2); an Emergency Motion for Preliminary Injunction, Dkt. No. 2; an Emergency Motion to Compel Disclosure, Dkt. No. 3; a Motion to Compel Disclosure, Unseal Gagged Account, and Enforce Beneficiary Access Rights, Dkt. No. 9; and a Motion to Show Cause and Forensic Audit, Dkt. No. 10. The Court denied the motions and dismissed the complaint, cautioning Ms. Boyd that she was not permitted to (1) "submit multiple complaints, a[s] any amended complaint supersedes the prior complaint"; (2) "file serial and duplicative motions dedicated to the same subject matter"; (3) seek to amend a pleading, seek relief, or communicate with the Court through an "exhibit packet"; (4) seek discovery from any source before the parties have conferred as required by Rule 26(f). Dkt. No. 16 at 3–4. After providing links to the Federal Rules of Civil Procedure, the Local Civil Rules, and the Western District of Washington's guide for pro se litigants, the Court warned Ms. Boyd that she "must ensure that her filings are procedurally appropriate, or else they will continue to be dismissed, stricken, or denied, and the Court may also impose sanctions." *Id.* at 5 & n.2.

On August 28, 2025, Ms. Boyd filed an emergency motion for a temporary restraining order ("TRO") requesting that the Court "immediately enjoin Defendants from gagging or withholding" her "ERISA plan benefits and Related accounts" as well as "compel the release of all withheld accounts and assets," Dkt. No. 21 at 1–2. The Court denied her motion, in part because she did not certify "in writing any efforts made to give notice and the reasons why [notice] should not be required," as required by Federal Rule of Civil Procedure 65. Dkt. No. 23 at 2 (quoting Fed. R. Civ. P. 65(b)(1)(B)).

On September 12, 2025, Ms. Boyd filed a "Notice of Pro Se Leniency" to "remind the Court that her filings must be construed liberally[.]" Dkt. No. 25-1 at 2. The Court struck this filing as procedurally improper on September 25, and warned Ms. Boyd that because she had "already submitted hundreds of pages of procedurally improper filings," "the Court may summarily strike procedurally improper filings going forward." Dkt. No. 26 at 2 n.1. The Court also noted that "[it] has already liberally construed—and continues to liberally construe—Ms. Boyd's 'inartful' submissions . . . and has directed her to resources to assist pro se litigants." *Id.*

On October 22, 2025, the Court dismissed Ms. Boyd's third amended complaint and gave her leave to amend once more. Dkt. No. 43 at 7. In dismissing Ms. Boyd's multiple proposed amended complaints, the Court observed that, "[a]s with her prior pleadings, Ms. Boyd's sprawling filings are incomprehensible." *Id.* at 2.

> Once again, she has filed multiple documents that appear to comprise the Third Amended Complaint. First, she filed a "Second Amended Complaint" of roughly nine pages. Dkt. No. 31 at 1–9 (capitalization removed). This was accompanied by an "index of exhibits and appendices" that are "referenced in Fourth Amended Complaint." Dkt. No. 31-2 at 1 (some capitalization removed). These "exhibits and appendices" proceed in a nonsensical manner: for example, exhibit 1 is followed by exhibits S, 9, 22, F4, JJ, "App. 17," and so on. Dkt. No. 31-2 at 1–2. Two hundred eighty-nine pages of exhibits and appendices are "attached" to this version of her complaint. Dkt. No. 35 at 1; Dkt. Nos. 35-1–35-12. Many of these are unlabeled and nonsensical. For example, roughly half of the 289 pages appear to be undecipherable spreadsheet entries. Dkt. Nos. 35-1–35-7. Many other exhibits duplicate those filed in connection with another amended complaint—described below—and appear to attempt to supplement her amended complaint. *Compare* Dkt. Nos. 35-8–35-12 *with* Dkt. Nos. 34-1–34-14.
>
> Ms. Boyd filed another amended complaint at docket entry 32 the same day. Confusingly, this document begins with a "motion to file fourth amended complaint under seal," and explains that the "THIRD Amended Complaint details a purported 'Federal Criminal Enterprise (RICO)' operated through the International Union of Operating Engineers (IUOE) network." Dkt. No. 32 at 1 (some capitalization removed). This additional complaint seeks "criminal referral" under a litany of criminal statutes, among other relief duplicating that sought in her accompanying complaint. Dkt. No. 32-1 at 9–10. Ms. Boyd filed over 156 pages of exhibits to this additional complaint, many of which appear to

ORDER DISMISSING COMPLAINT WITH PREJUDICE - 3

> be an attempt to supplement her complaint. *See, e.g.*, Dkt. No. 34-4 at 1–4 (legal argument styled as a "declaration" of Ms. Boyd); *id.* at 5–6 (same); *id.* at 20–21 ("continuance declaration" from Ms. Boyd); Dkt. No. 34-7 ("Cold Blood and Steel" declaration from Ms. Boyd). Many exhibits are unlabeled (in violation of applicable law regarding the format of exhibits) and untethered to any argument in the complaint (indeed, it is impossible to tell what unlabeled exhibits relate to). *See, e.g.*, Dkt. No. 34-4 at 7–8, 11, 15; Dkt. No. 34-5 at 1–13; Dkt. No. 34-6 at 1–9.

*Id.* at 2–3 (footnotes omitted). Relatedly, the Court noted that in Ms. Boyd's motion for appointment of counsel and for service of process by a U.S. Marshal, she had again "improperly attempt[ed] to supplement th[e] motion with three separate filings submitted eight days after her initial motion." Dkt. No. 43 at 1 n.2 (citing Dkt. No. 40 "Revised Supplement in Support of Motion for Appointment of Counsel"; Dkt. No. 41 "Notice of Factual Update: Geographical Risk and Counsel Justification" (capitalization altered); Dkt. No. 42 "Notice of Supplemental Authority and Motion to Expedite Ruling on Appointment of Counsel" (capitalization altered), which included roughly 85 pages of exhibits). The Court observed that "[t]his flurry of filings continues a monthslong pattern of serial motions and other frivolous submissions from Ms. Boyd," despite the Court providing her with links to applicable rules and to the pro se guide—and despite prior cautions from the Court "that filings like these 'violate the Federal Rules of Civil Procedure and other applicable law in a number of ways,'" and that Ms. Boyd "is not permitted to submit multiple complaints[.]" *Id.* at 3 (citation modified).

After concluding that "[i]t is apparent from Ms. Boyd's filings that she did not consult the applicable rules or the guide, and she did not heed the Court's order," the Court again reminded her that "pro se litigants are subject to the same procedural requirements as other litigants," again provided links to the federal and local rules and the pro se guide, and warned that "**[f]ailure to comply with applicable laws, rules, or orders may result in sanctions up to and including revocation of e-filing privileges and dismissal of the case altogether.**" *Id.* at 3, 7. The Court

ORDER DISMISSING COMPLAINT WITH PREJUDICE - 4

permitted Ms. Boyd to file no more than "*one singular* amended complaint, which will supersede all previous complaints." *Id.* at 6.

On November 1, Ms. Boyd filed a fourth amended complaint, followed by a motion for service by a U.S. Marshal on November 10, 2025. Dkt. Nos. 44, 47. On November 19, 2025, Ms. Boyd filed a "Notice of Pending Motion and Request for Expedited Briefing" asking the Court to issue an "expedited ruling" on her motion for service by a U.S. Marshal. Dkt. No. 49 at 1 (capitalization altered). Later that same day, this Court struck the notice as procedurally improper and informed Ms. Boyd that "the Court was aware of Plaintiff's pending motion and addressed it in due time." Dkt. No. 51.[1]

On December 7, 2025, Ms. Boyd filed a declaration and over 150 pages of attached motions and exhibits to "demonstrate a systemic RICO enterprise, fiduciary corruption, and collusive litigation tactics by the Defendants." Dkt. No. 57 at 1; *see also* Dkt. Nos. 57-1–57-11. The Court struck these filings as procedurally improper on December 8, 2025, Dkt. No. 61, writing:

> The Court has already ruled on [docket entries] 31, 33, 36, 37, 38, 39, and 40—the motions to which [Ms. Boyd's declaration] refers. The declaration and its supporting exhibits are therefore procedurally improper fugitive documents and must be stricken. The Court has reminded Plaintiff repeatedly that "pro se plaintiffs . . . are subject to the same procedural requirements as other litigants," *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022); *see, e.g.*, Dkt. No. 16 at 5 (reminding plaintiff of procedural requirements); Dkt. No. 26 at 2 n.1 (same); Dkt. No. 43 at 7 (same). If Plaintiff continues to violate applicable rules, the Court will impose sanctions up to and including dismissal of Plaintiff's suit. *See Ghazali v. Moran*, 46 F.3d 52, 5354 (9th Cir. 1995) (per curiam) (finding failure of pro se litigant to follow procedural rules justified dismissal of civil rights action).

*Id.*

Despite the Court's prior orders (1) limiting Ms. Boyd to filing *one singular* amended complaint, (2) informing her that she may not amend her complaint in a piecemeal fashion, and

---

[1] The Court accepted the fourth amended complaint and ordered that "[s]ummons may now issue, and Ms. Boyd is permitted to file appropriate motions and other filings in accordance with applicable law." Dkt. No. 45.

ORDER DISMISSING COMPLAINT WITH PREJUDICE - 5

1  (3) warning her that further frivolous submissions may result in the dismissal of her complaint, on
2  December 12, 2025, Ms. Boyd filed a document titled "Notice of Supplemental Authority." Dkt.
3  No. 63. This notice effectively sought to amend her complaint with "new factual developments
4  that ha[d] occurred since the Court's November 1, 2025 order accepting the Fourth Amended
5  Complaint"; specifically, "investigations into the systematic pension fraud affecting the IUOE
6  pension system, including the entities named as defendants in this action." *Id.* at 1–2. However,
7  these "investigations" were really Ms. Boyd sending emails, reports, and other submissions to
8  federal agencies. *Id.* at 2–4. In her notice, Ms. Boyd misrepresented to the Court that "five federal
9  agencies have independently determined the alleged conduct warrants investigation[.]" *Id.* at 5.
10 Despite the Court's prior dismissal of her criminal RICO claims with prejudice, Dkt. No. 43 at 6,
11 Ms. Boyd attempted to resuscitate these claims in the notice. *See, e.g.*, Dkt. No. 63 at 10–11; *see*
12 *also* Dkt. No. 64-4 at 18 ("Criminal enterprise scope: pattern sufficient for RICO[-]style referral").
13 According to Ms. Boyd, the notifications—which "directly bear on . . . the scope of the alleged
14 ERISA violations, and the coordinated nature of Defendants' conduct," were "properly presented
15 as supplemental authority pursuant to Local Civil Rule 7(h)" and "under [her] duty of candor to
16 the tribunal." *Id.* at 2, 13. On December 17, 2025, the Court struck the notice because it constituted
17 an improper attempt to revive RICO claims that the Court had previously dismissed with prejudice
18 and because it was "factually frivolous within the meaning of Federal Rule of Civil Procedure 11
19 and 28 U.S.C. § 1915." Dkt. No. 68 at 6 (citing Fed. R. Civ. P. 11(b); 28 U.S.C. § 1915(e)(2)(B)(i);
20 *see also Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) ("[A] finding of factual frivolousness is
21 appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]")).
22 The Court further explained that "[t]here is no applicable Local Civil Rule 7(h); Local Civil Rule
23 7(*n*) permits supplemental authority in support of a *motion*, but Ms. Boyd's filing does not relate
24

ORDER DISMISSING COMPLAINT WITH PREJUDICE - 6

to any motion, and as the Court has repeatedly explained to her, she may not supplement her complaint or otherwise attempt to communicate with the Court in this manner." Dkt. No. 68 at 6

Despite the Court's earlier warnings to Ms. Boyd that she may not seek discovery from any source before the parties have conferred as required by Rule 26(f), and that Local Civil Rule 37(a)(1) requires any motion to compel to contain a certification that the moving party has met and conferred with the party allegedly failing to make any disclosure, Dkt. No. 16 at 4, on December 14, 2025, before any Rule 26(f) conference took place and without certifying that she met and conferred with any Defendant, Ms. Boyd filed an "Emergency Motion to Compel," consisting of a two-page motion and over 50 pages of "exhibits." Dkt. Nos. 64, 64-1–64-5 (capitalization altered). In her motion, she requested that the Court compel "immediate and full production of all outstanding ERISA-mandated plan documents" because the "continuous refusal to disclose these documents constitutes willful obstruction of a federal investigation and is a direct continuation of a six-year fraudulent concealment scheme." Dkt. No. 64 at 1 (emphasis omitted). She also asked for "*in camera* review" of "Plaintiff's recorded evidence," which is a "'Gag Order' Transcript/Audio" that she drafted. *Id.* at 1; Dkt. No. 64-4 at 3–6 (titled "Exhibit TT-3A" by Ms. Boyd). Other exhibits were similarly self-authored or random and nonsensical. *See generally* Dkt. Nos. 64-1–64-5. In its December 17, 2025 order, the Court denied the motion because it "violate[d] Local Civil Rule 37, disregard[ed] the Court's prior order informing Ms. Boyd of that rule's requirements, and [wa]s frivolous under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1915." Dkt. No. 68 at 7.

Despite the Court's prior order denying Ms. Boyd's earlier motion for a TRO in part due to her failure to comply with Rule 65's notice provisions, Dkt. No. 23 at 2, on December 16, 2025, Ms. Boyd filed another motion for a TRO that failed to describe any efforts made to give notice to Defendants or give reasons why such notice should not be required. *See generally* Dkt. No. 66;

Fed. R. Civ. P. 65(b)(1)(B). The motion sought to "bind" Defendants "from transferring, liquidating, or disposing of" various assets. Dkt. No. 66 at 1–2. Ms. Boyd based her request on the potential for "immediate and irreparable" injury due to Defendants' (1) ability to secret away or move the subject funds, (2) "regulatory dark period exploitation," and (3) "active, coordinated obstruction of justice" for their "failure to produce required discovery documents for over 2,425 days." *Id.* at 1 (citation modified). In its December 17, 2025 order, the Court denied the motion because it "violate[d] Rule 65, disregard[ed] the Court's prior orders regarding that rule and regarding how discovery works, and [wa]s frivolous under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1915." Dkt. No. 68 at 7.

The Court noted in its December 17 order that "Federal Rule of Civil Procedure 41(b) permits the Court to sua sponte dismiss a plaintiff's case when she fails to comply with court orders." *Id.* at 8 (citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005)). The Court ordered Ms. Boyd to "show cause within 21 days why the Court should not dismiss her case with prejudice," and directed that her response "conform to the word limits of Local Civil Rule 7(e)(3), contain a word count certification, and be formatted in accordance with Local Civil Rule 10(e)." *Id.* at 9 (capitalization altered).[2]

---

[2] Within eight hours of the Court posting its order, Ms. Boyd filed a "Notice of Filing Investigative Disclosure Regarding Judicial Obstruction and Conflict of Interest." Dkt. No. 69 (capitalization altered). The filing was accompanied by a 20-page document addressed to the U.S. Marshal's Service and titled "Recusal Request for Judge Lauren King," Dkt. No. 69-2 (capitalization altered), and an eight-page document titled "Judge Lauren King – Pattern of Obstruction," Dkt. No. 69-3 (capitalization altered). Ms. Boyd contended that the undersigned judge "dismissed a fully documented $56 trillion fraud case on hyper-technical procedural grounds without considering merits," "created impossible procedural traps designed to prevent case from proceeding," "manipulated the court docket (CM/ECF system) to prevent proper service of defendants," "threatened sanctions to chill plaintiff's legitimate claims," "demonstrated coordination with defendants through suspicious timing and denial of due process," and "added defendants to the case without plaintiff's authorization, creating service confusion." Dkt. No. 69-2 at 2 (capitalization altered). According to Ms. Boyd, these actions constituted "a pattern of conduct that violates 28 U.S.C. § 455 (judicial disqualification)." *Id.* Ms. Boyd also alleged that the undersigned judge had a conflict in this case because her former employer, Foster Garvey P.C., "is inextricably linked to the Defendants in this action." Dkt. No. 69 at 1.

Pursuant to 28 U.S.C. § 455, the Court determined that "Ms. Boyd's assertions [we]re unsupported factually and legally," and noted that "[a] judge is not disqualified by a litigant's suit or threatened suit against him [in the

On December 17, 2025, along with her motion for recusal, Ms. Boyd filed a one-page "Sworn Statement of Good Cause in Response to Order to Show Cause." Dkt. No. 69-1.

## II. DISCUSSION

"Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990). Federal Rule of Civil Procedure 41(b) permits the Court to sua sponte dismiss a plaintiff's case when she fails to comply with court orders. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005). Dismissal is likewise available as a sanction pursuant to the Court's inherent power to control its docket. *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (a "primary aspect" of the district court's inherent authority "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process," including "outright dismissal of a lawsuit").

A district court must weigh five factors in deciding whether to dismiss a case for failure to comply with a court order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006); *accord Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987); *see also id.* ("[I]t is preferred [but] not required that the district court make explicit findings in order to show that it has considered

---

context of] a litigant's intemperate and scurrilous attacks[.]" Dkt. No. 74 at 3 (quoting *United States v. Sutcliffe*, 505 F.3d 944, 958 (9th Cir. 2007)). As such, the Court found "no basis to find that the undersigned judge's impartiality might reasonably be questioned or to find that there is an appearance of bias in this case," and denied the request for recusal. *Id.* at 4. In accordance with Local Civil Rule 3(f), the Court then referred Ms. Boyd's motion to Chief Judge Estudillo, who affirmed the denial of recusal, finding "no evidence that would lead a reasonable person to question Judge King's impartiality." Dkt. No. 76 at 4.

these factors[.]" (citation omitted)). "[W]here a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). "[F]actor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Id*. However, "it is not always necessary for the court to impose less serious sanctions first." *Id.* The factors are "a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything," *id.*, and the decision to dismiss under Rule 41(b) is ultimately "committed to the discretion of [the] district judge," *Smith v. Legacy Partners, Inc.*, No. 2:21- CV-00629-JHC, 2022 WL 2135369, at *1 (W.D. Wash. June 14, 2022).

The present case involves numerous violated court orders and, as *Valley Engineers* lays out, three of the factors require little analysis. The first two factors—the public's interest in expeditious resolution of litigation and the Court's need to manage its docket—favor dismissal. Ms. Boyd's contumacious filings "preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants," *De Long*, 912 F.2d at 1148, and "[i]t is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants," *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002); *see also Farson v. City of Lake Stevens*, No. 22-CV-00405-LK, 2023 WL 2913754, at *4 (W.D. Wash. Apr. 12, 2023) (noting that a plaintiff's "repeated disobedience in the face of multiple warnings evinces a strong likelihood that he will continue to flout the Court's directives and cause delays," and finding that the first factor weighed in favor of dismissal where "[n]othing suggests that [the plaintiff] intends to constructively participate in this litigation, let alone abide by the Court's orders and applicable law in working towards an expeditious resolution of the case"). The fourth factor—the public

policy favoring disposition of cases on their merits—"cuts against" dismissal with prejudice, as it is a case-dispositive sanction. *Valley Eng'rs Inc.*, 158 F.3d at 1057.

As to the third factor, risk of prejudice to the defendants, "[a] defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990). Defendants in this case have to date had relatively little involvement. However, as discussed above, Ms. Boyd has repeatedly filed premature and frivolous motions to compel and other filings seeking to revive claims against the Defendants that the Court dismissed with prejudice. Nothing suggests that Ms. Boyd intends to stop this behavior and abide by the Court's orders and applicable law, and her continued intransigence would impair the Defendants' ability to proceed to trial and would threaten to interfere with the expedient and rightful decision of the case. *Pagtalunan*, 291 F.3d at 642. The Court therefore finds that the third factor weighs in favor of dismissal.

With respect to the availability of less drastic sanctions, Ms. Boyd is proceeding pro se, so the Court lacks the ability to refer her to the bar for sanctions as would be possible for an attorney. Similarly, Ms. Boyd is proceeding in forma pauperis, meaning any monetary sanctions would likely be meaningless. Revoking Ms. Boyd's e-filing privileges is an option, *see* Dkt. No. 43 at 7, but simply requiring her to file paper motions does not make it more likely that she will abide by Court orders or comply with applicable law. In sum, the Court lacks viable and adequate alternatives to dismissal. The Court has warned Ms. Boyd *repeatedly* that her behavior could lead to dismissal of her complaint. *See* Dkt. No. 16 at 3–5 & n.2; Dkt. No. 43 at 3, 7; Dkt. No. 61; Dkt. No. 68 at 9. But the Court's warnings have had no effect on Ms. Boyd's behavior. The Court therefore finds that the fifth factor weighs in favor of dismissal.

Ms. Boyd's response to this Court's order to show cause, Dkt. No. 69-1 ("Plaintiff's Sworn Statement of Good Cause in Response to Order to Show Cause"), is a microcosm of all the issues

discussed above, and reinforces the Court's view that dismissal is warranted. Most importantly, Ms. Boyd does not acknowledge her violations of this Court's orders. *Compare* Dkt. No 69-1 *with* Dkt. No. 68. And while Ms. Boyd herself quotes Federal Rule of Civil Procedure 8 as requiring that complaints contain a "short and plain" statement of the claim, she accuses the Court of "evidentiary suppression" for dismissing her third amended complaint because it included hundreds of pages of purported evidence. Dkt. No. 69-1 at 1. She also fails to mention that the Court allowed her to amend that complaint. *See* Dkt. Nos. 44–45. As the Court previously explained, "[a]t a bare minimum, Rule 8(a) mandates that a plaintiff 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Dkt. No. 43 at 4 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and "[n]either defendants nor the Court are obligated to search through hundreds of pages in order to determine what allegations she is attempting to make; the burden of providing a short and plain statement of the claim showing that the pleader is entitled to relief' falls squarely on plaintiff," *id.* (citation modified).

Furthermore, just as Ms. Boyd previously mischaracterized her submissions to federal agencies as "investigations into the systematic pension fraud affecting the IUOE pension system, including defendants named in this action," Dkt. No. 63 at 1–4, and misrepresented to the Court that "five federal agencies have independently determined the alleged conduct warrants investigation," *id.* at 4–5, she now asserts that the undersigned Judge has a conflict which is "now a matter of formal investigation by the DOJ Public Integrity Section," Dkt. No. 69-1 at 1. Ms. Boyd appears to base that statement on the mere fact that she "caused . . . the Notice of Filing Investigative Disclosure, the Motion for Recusal, and all associated Exhibits to be prepared for service upon [DOJ] via Certified Mail[.]" Dkt. No. 69-4 at 1. This unsupported assertion only reinforces the Court's finding that Ms. Boyd does not intend to cease her frivolous filings.

       Ms. Boyd also makes several irrelevant arguments against dismissal, including (1) that "dismissal on January 8 would occur before [some] Defendants have even filed a substantive response[,]" and (2) that Defendants are playing a "shell game" regarding the proper address for service and "the duty to resolve these address discrepancies for an IFP litigant lies with the U.S. Marshal, not the Plaintiff." *Id* Ms. Boyd concludes her response by stating she "has shown 'automatic good cause' for an extension." Dkt. No. 69-1. The Court did not base its order to show cause on any issues with respect to service, and the Defendants' substantive responses are irrelevant to the matter at hand. Finally, Ms. Boyd's response does not contain a word count certification and is not formatted in accordance with Local Civil Rule 10(e), as the Court previously ordered. Dkt. No. 68 at 9.

       On January 9, 2026, Ms. Boyd filed a second, untimely, unauthorized, 17-page "Response to Order to Show Cause," accompanied by a declaration and over 400 pages of exhibits. Dkt. Nos. 79, 80, 80-1–80-21. Because the response is unauthorized and untimely, the Court does not consider it.[3] To the extent this response could be considered a motion for reconsideration of the Court's order denying Ms. Boyd's request for recusal, it is untimely and the Court therefore does not consider it. LCR 7(h)(2).

---

[3] Even if the Court were to consider this response, it would not change the result. As with the first response, the second response makes no attempt to address the Court's concerns regarding Ms. Boyd's repeated violations of Court orders and applicable rules governing civil litigation, and instead perpetuates her contumacious behavior: she filed two responses when the Court allowed her one, did not abide by the Court's order requiring her response to "conform to the word limits of Local Civil Rule 7(e)(3), contain a word count certification, and be formatted in accordance with Local Civil Rule 10(e)," Dkt. No. 68 at 9, and again ignores the Court's prior order dismissing her RICO claims and her requests to assert violations of criminal statutes, *see* Dkt. No. 79 at 15 ("RICO enterprise affecting 400,000+ workers"); Dkt. No. 80 at 11 (asserting that "[t]his case presents substantial questions of federal law involving . . . securities fraud, wire fraud, mail fraud, money laundering, RICO violations, and identity theft affecting thousands of workers and billions of dollars in pension assets."); *see also* Dkt. No. 43 at 2–3, 6. In addition, Ms. Boyd again makes misrepresentations to the Court, stating that "five federal investigations are active" and that "Form 5500 records prove Foster Pepper represented IUOE during Judge King's tenure." Dkt. No. 79 at 16. As the Court previously stated, "to the extent any of the undersigned judge's former colleagues represented any parties to this action, no such representation occurred in the same or a related matter during the time the undersigned was associated with the firm." Dkt. No. 74 at 3 n.2. Furthermore, a search of the Form 5500 records for IUOE Local 701's plan for the years that the undersigned was employed at Foster Garvey (2012 to 2021) reveals no relationship with Foster Garvey. *See generally* https://www.efast.dol.gov/5500Search/.

The Court finds that Ms. Boyd has not shown good cause why her suit should not be dismissed with prejudice, and that the five *Phenylpropanolamine* factors favor dismissal with prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court DISMISSES Ms. Boyd's suit with prejudice.

Dated this 9th day of January, 2026.

Lauren King
United States District Judge